Good morning, Illinois Appellate Court, 1st District Court is now in session, the 4th Division. The Honorable Justice Robert E. Gordon presiding, case number 1-9-1-1-4-5, People v. LaMontreal Gensley. Good morning. Would the lawyers who are going to argue the case please introduce yourself to the court. My name is Joshua Bernstein. I represent the appellant, LaMontreal Glensley. Assistant State's Attorney Noah Montague on behalf of the people. The appellant, are you going to reserve some time for rebuttal? Yes, please, Your Honor. Five minutes should do. Thank you. Okay. Proceed. May it please the court, counsel. So, this case boils down really to one essential issue, and that issue is, how do you address a successive post-conviction petition filed by an emerging adult, arguing that the Miller protections should be extended to him under the Illinois Constitution? The position that we believe, that I believe is the better one, is exemplified in People v. Daniels, in which the defendant was, this court allowed the defendant to remand back to the circuit court so that he could basically flesh out the allegations in his petition that the linchpin being not the gravity of the defendant's crime, because every defendant who is seeking this kind of relief has committed a fairly serious crime, some very heinous crimes, but the linchpin is the fact that the defendant himself may, like Mr. Glensley, have personal attributes that are consistent with those displayed by youths under 18. And that being the case, we believe that the proper way to analyze and evaluate a petition, you know, a request for relief to file a post-conviction petition in this context, is whether the prima in the petition, regardless of what offense the defendant may have committed. As this court is aware, the state has cited a case, People v. Handy, and there are other cases that have come out of various divisions of this court, in which the court considered the severity of the defendant's crime in the sense that the defendant's participation played a role in whether he or she was permitted to continue on with their post-conviction petition. We recognize that that is a valid and legitimate factor, but the factor, it becomes relevant and valid on remand. That's a sentencing factor, and as the Daniel Court noted, that becomes relevant once the tried to prove that his personal attributes are those that should permit him to move on to the next stage of a successive post-conviction proceeding. In this case, Mr. Glensley, as you are no doubt aware, had one conviction for possession of a controlled substance. Actually, it wasn't a conviction, I believe it was an adjudication when he was a juvenile. He was on probation at the time this offense was committed. He'd been a gang member since the age of 12, was immersed in the gang life at the Ida B. Wells Projects, nonetheless had a job, purported to have a family that supported him, and was not one of these defendants like Handy, who had a really terrible track record coming into this. Basically, what we're asking this court to do is to set aside the analysis in Handy, to focus really on who the defendant is, rather than what the defendant did. I agree with the result, but I don't believe that the outer limits of allowing a defendant to make a case in a post-conviction petition like this are those exhibited in-house. Yeah, the defendant in-house did deserve to have another chance. We're not even asking for a remand for resentencing. We're asking for a remand so that Mr. Glensley can further develop the record as to the factors identified in Miller. We don't believe that house should be the outer limit on that. The house may be one end of the spectrum. There's the house people, but then there are people on the very other end, in many cases, who participated deeply in heinous crimes. In the Kara Squillow case, the defendant killed a police officer, and this court remanded. So, what we're asking this court to do, in a nutshell, is adopt, as I said, set aside the analysis that was used in Handy, which feeds off of house's evaluation of the participation in the offense. Let that wait for another stage in these proceedings, and instead, look at the analysis that was argued in Daniels. And really, I think- Counsel, I have a question. What about their argument that house applies to mandatory de facto life sentence, and in here, in this case, target with a discretionary de facto life sentence? Your Honor, I think the issue with the mandatory versus the de facto is a bit of a red herring here, in the sense that when this sentence was imposed, the court had no guidance. There was no crystal ball the court could have employed to determine that 12 years down the road, Miller would come down and completely upend our sentencing of juveniles, and that all of this case law would be developed. I don't think that the mandatory and the discretionary aspect of it is really a legitimate factor to consider at this point. And it really comes back to what you're doing with the Miller universe of cases. If a defendant exhibits the traits that are similar to a juvenile, I believe that that defendant should be entitled to go forward in these types of proceedings. If he's 18, 19, I don't know where the cutoff is, but in this case, Mr. Glinsey was 18 years old and 11 days. Let me ask you this question. This is a first stage case, correct? It's a motion for leave to file a successive petition, Your Honor. So first stage in that context, yes. So if we granted it, it merely goes to the second stage, correct? That's correct, Your Honor. And that's all we're asking this court. Wait, wait, wait. In house, what stage was that? In house, that was a, I believe that was a, it was a successive petition, first stage, and they determined that a re-sentencing was the correct remedy. Although, as I understand it, that issue is on appeal in the Supreme Court right now. We're not... That was on the panel in house. We're not reaching... Handy, what stage was that? Excuse me, Your Honor? What stage was the other case that you're referring to? Handy was a successive petition as well. A first stage, in this context, a first stage for a successive petition. And Daniel's was as well. So the cases on both sides are coming, you know, on both... In both camps are coming down in the context of successive petitions. If this were a first stage case, I think it would be pretty cut and dried. It's just that the successive petition first stage is tougher. You know, it's a slightly tougher analysis than an actual, you know, first stage pro se initial PC. And so, as I said, we're not asking for what this court gave in house. We acknowledge that... I should say, we argue that Mr. Glindsay has made a prima facie case but we also acknowledge that there should be a remand for him to develop this further because it was a pro se petition. And, you know, he didn't have the benefit of an attorney to help really drill down into some of these factors. Factually, what this record does show to me though, and I believe it should be pretty obvious. The court did not believe if he is entitled to juvenile treatment under the Illinois Constitution, the court statement when it was sentencing him that he shouldn't be allowed... I can't remember the exact word. There's like any time soon he shouldn't be released. That tells me that the court was not making a determination that he was one of the rare, irretrievably depraved individuals who should not be out on the streets. And I think that's the difference between a case like Handy, where it's apparent that the court thought he should not be out on the streets or Carasquillo where I think he got a 200 year sentence that was reduced to 120 years. So, in sum, what we're asking you, your honors, is very simple. We're asking you to really adopt the Daniels analysis and look at Mr. Glinzy himself. Was he acting under the impulses of a juvenile when he committed this offense and set aside for a later stage that can be evaluated in the circuit court, his participation in this offense. And that is in no way intended to deprecate the offense, but we just believe that it's more appropriate after he's had remand and an opportunity to develop his the record a little better. Okay, well, you're past your time. You want to keep some time for rebuttal, correct? Well, I just have one question with regards to Daniels. So, in Daniels, there was an issue of mental health, documented mental health issues. Here, we don't have any documented mental health issues. Can you address that issue? Well, your honor, I think, unfortunately for the defendant in Daniels, I think the Supreme Court's opinion in Cody pretty much settles that. If he has, as I understand it, Cody has kind of cut off, you know, Cody cut off the use of the Miller factors with respect to people who have mental illness, unless I'm misremembering, and cut them off because those are things that never go away. The point of, you know, Miller and all this legislation, I'm sorry, litigation, of course, is that the defendant will grow out of the impulse of youth and mature. So, as far as I'm aware, and the record is sparse here, Mr. Glenzie does not assert that he has any mental health issues. And whether or not I agree with how Cody ended up in the end, that's what it is. So, unless your honors have any further questions, I ask that you vacate the order denying him Mr. Glenzie leave to file his petition. I have a question for you, Mr. Bernstein, very quickly. If, in fact, Mr. Glenzie is not arguing that he has some mental defect, what is it specifically about him that is worthy of a remand? Well, I think if you look closely at the record, your honor, I think it really shows a couple of things. Number one, there is the peer pressure. There's at least a hint of peer pressure here in that the motivating force for this shooting was Antoine Anderson, a fellow gangster disciple. His brother was shot and he vowed revenge. And he roped in Mr. Glenzie to his revenge scheme. I'm not saying Mr. Glenzie didn't play along. He participated. But the point is, it was Antoine Anderson, a peer, who motivated him to do this, on top of which he'd been a gangster disciple from the age of 12. And that tells you someone who is immersed in a culture, I mean, I guess we could probably talk for days about it, how the gang lifestyle really kind of steers a person's behavior. Mr. Parson, forgive me for interrupting you, but to pick up on your point. So you're suggesting then that what's unique about your client is the fact that he was subjected to some sort of peer pressure? You think that to be something unique? Well, your honor, I don't necessarily think it's unique, but I think that is evidence that he may have been exhibiting the attributes of a person under 18 in committing this offense and in participating in this offense and in participating in the gang lifestyle. And I think that's something that needs to be explored more deeply. And the way to do that would be for a remand so that he could develop these issues in a successive post-conviction petition. Tommy, does the case law show any differences between a discretionary sentence and a mandatory sentence? Well, from this district, your honor, I'm not, you know, there are cases, the discretionary, how can I say this? I apologize. There are cases in which the sentence was mandatory and the courts noted that, but not all of the cases in which relief was granted were cases in which there was a mandatory sentence. Um, the, what it really boils down to is at this point, we know what to be de facto life sentences, discretionary or otherwise, were imposed by these courts on emerging adults. Um, so, you know, yes, there are mandatory cases and- But isn't there a flu of cases that say it doesn't make a difference? Um, well, this Illinois Supreme Court has- Franklin, Carasquillo. Yes, your honor. To give you an example, I mean, I could probably name 20 or 30 cases. You're not familiar with those cases? Well, your honor, I'm- You're not familiar. I'm familiar with Carasquillo for sure, but, uh, and since- Savage. Savage is another one that comes to mind. Correct, your honor. And what I'm arguing is that that's the- We cited Carasquillo in our briefs. We believe that is the correct position. Uh, and just, uh, dabbling in the recent case law, I see that in the last couple of weeks, a bunch, a number of cases have come out. Um, you know, I apologize. I've not had a chance to read those. I was preparing for this argument. But your honor, I agree with you. Carasquillo is on point here. There are some distinguishing features, but it is on point. And we agree with that. Any further questions by the members of the panel? Any further questions? No, no further questions. Okay, let's hear from the state. May it please the court, Assistant State's Attorney Noah Montague, on behalf of the people in this matter. Your honors, this matter comes before the court from a shooting which occurred in 1998 where the petitioner was actually the first shooter, but didn't hit anyone. He stopped shooting when the gun jammed. After the gun was unjammed, a second shooter shot and killed an innocent bystander. As stated by counsel, this is here on a successive post-conviction petition where his motion for leave to file was denied. He was challenging his sentence because he was 18 years old at the time of the offense. And he received a de facto life sentence of 45 years. Importantly here, that sentence was discretionary. The minimum was 20 because the firearm enhancements were not in effect at that time. And because the sentence was discretionary, the court had the chance to hear and consider numerous factors in its ruling on the sentence, including the defendant's youth and his rehabilitation potential. But the state's view of the record found the defendant to be incorrigible. The state maintains that the leave to file a successive PC in this case was properly denied because the defendant has established cause but not prejudice. And it's important to recall just briefly that there is no grounds to establish a categorical count your honor. Okay, there is no grounds to establish a categorical ban for 18 to 21 year olds receiving a de facto life sentence. Miller itself doesn't even create one for juveniles. And what we're arguing here is whether or not the proportion of penalties clause applies applies to this defendant's sentence as applied, which requires a finding that the is a very fact specific finding. What we have here and what you see in the record is that because it was a discretionary sentence that the court had a hearing. And in that hearing, the court heard that the defendant was 18 years old at the time of the offense. He had no psychological problems. He had no substance abuse problems. He was not abused as a child. He was never in special education. He was raised by his parents and he had one prior conviction for possession of a controlled substance. The court and again, the state maintains that the court did find the defendant was incorrigible. And what we the state sees here is that this defendant doesn't want a different process for his sentencing. What he wants is simply a different outcome because this defendant does not put forward any proof that the Miller that the Miller factors applied to him specific to his facts and circumstances. Just general information on the brain maturity of 18 to 21 year olds, which the state maintains is not enough to grant leave for petition for rehearing for excuse me, for successive petition. And because of this, we're asking, I have a question regarding the prejudice problem. What about their argument that given the fact that the cases that he's relying on now, for example, like house had not been decided yet and therefore he didn't have an opportunity to raise these arguments previously because these cases didn't exist at the time. Your Honor, the state maintains that that establishes cause, but not prejudice. And we're asking this court to distinguish the decisions and Johnson and Ruiz, where the court found that really in the state's opinion, conflated cause and prejudice by finding that because there was cause that the defendant has established prejudice, but simply because he could not have raised it at the time doesn't mean that his sentencing was not Miller compliant. And you can see that in people versus Holman, where a 17 year old was sentenced, but the court found that his sentencing was Miller compliant despite getting a life sentence by looking at the details of the sentencing hearing and looking at the facts specific to that case. Is that your honor? Yeah, okay. The state is asking this court to follow the second division's opinion in the case of people versus carry on. And the state maintains that the correct analysis was applied in that case, which showed said that in order to establish prejudice, you must show more than simply the general brain development of young adults. In that case, it was a successive post-conviction petition. The defendant was 19 at the time he was sentenced. He had a minimum of 20 and got 55 years. But what the court found after looking at the sentencing hearing and the facts of the case was that the sentence did not shock the moral conscience because it represented the culpability of the defendant in the case. And that is the same thing that the state is arguing here. And we're asking this court to make that finding. And importantly, many cases recently have been found to be what is called a catch-22 case where the defendant is denied the chance to develop his record and is asking for that chance, but it can't do it because he has never developed his record. Well, this is not a catch-22 case. Because the sentencing hearing was a discretionary sentencing, this defendant had a chance to develop his record. He is not putting forth any new information in his PC. He's simply asking that the court take everything that was presented at a sentencing hearing already and consider it again and come to a different outcome. That's not a catch-22 case. He's already presented all this information. Let me ask you this. You're asking us really to reject all the cases that this division has already written on this subject matter, aren't you? No, we're asking this court to follow Handy. Handy was the fourth division, if I'm not mistaken. Okay, proceed. All right, Your Honor, that is the total of my argument. For those reasons and the reasons stated in the people's brief, we'd ask that you affirm the denial of the motion for leave to file a post-conviction petition. Any questions from any members of the panel? No, of course not. Okay, let's hear the rebuttal. Very briefly, Your Honor, there are definitely some misstatements that need to be addressed here. The court did not find Mr. Glinsey incorrigible, and notwithstanding counsel's characterization that it did, the court clearly said he shouldn't get out soon. That's what the court said. I would also point this court to, I'm afraid I don't have the specific citation, but it's either in volume J17, page 17, 18, or 19, the state didn't ask for a specific sentencing at hearing. They basically said he has a history of delinquency or criminal activity, and they asked for appropriate sentence for purposes of deterrence. And the history of delinquency and criminal activity here was one possession of a controlled substance. So I wanted to be sure Your Honors understood that. But there's another thing here, and this is really the essence of the state's disagreement with our position. They believe that if you have a sentencing hearing at which a discretionary sentence is imposed, there's no catch-22 because the defendant has a chance to develop a record. But as the court said in Johnson, the issue, and by the way, this is directly out of Miller, the issue is whether the sentence was filtered through the lens of youth and the specific propensities of youth. And in Carasquillo, the court basically literally said the judge couldn't look forward in 1977 to what would be happening now, which is what I stated in my argument. So to say that he had a sentencing hearing and that the sentencing was discretionary does not mean that his hearing complied with what we're asking this court for, which is ultimately a chance to prove that he's entitled to the protections of a youthful offender because his brain was not developed. That's his allegation in his petition, and he should have a chance to prove that. As for adding additional facts to the petition, I believe this record shows that there is at least of the influence of the gang and peer pressure on him, and he should be allowed a chance to develop it further. He argued that in his petition, he argued that he didn't have an extensive criminal record, that he was 18 years old and 11 days, and that the qualities of youth were not considered. So, I mean, obviously the state and I disagree on this, but as far as the facts go, there was no finding of incorrigibility, and the state didn't ask specifically for, they asked for an appropriate sentence in essence. Unless your honors have any other questions, that's about all I've got to say. I'm asking again that you vacate the order denying Mr. Glinsey leave to file his successive petition and order this matter remanded to the circuit court so that he has a chance to develop these issues at the second stage in a petition. Thank you. Any questions by any members of the panel? Okay, well, thank you very much. You gave us some interesting arguments. We've had a number of very similar cases, and I think we'll be getting more and more of these cases. And shortly, you'll have an opinion or an order, and the court will be adjourned, but I ask the justices to remain.